Good morning. My name is Debra Bookout, and I represent Petitioner Appellant Carl Sullivan. This Court granted Sullivan's request to expand the Certificate of Appealability to include the issue of equitable tolling. In its supplemental briefing, the State objects to review of the issue because Sullivan didn't raise it in the District Court. How do you respond to that? Well, while it is true that issues not raised in the District Court are generally considered waived, there are exceptions to that rule. This Court will exercise its discretion to review issues not raised below where the issue is one purely of law and there is no prejudice to the opposing party. I submit that's precisely the type of issue presented here. Sullivan's equitable tolling argument requires no further factual development in the District Court. The facts necessary to resolve the issue of equitable tolling were, in fact, presented to the District Court and were undisputed. Additionally, the State has failed to present any argument as to how it could be prejudiced if the Court were to review the issue. On the respondent's supplemental answering brief that we just got on page 8, I'm sure you saw this, Sullivan also cannot establish that he exercised reasonable diligence in seeking federal review. On December 13, the Nevada Supreme Court denied his direct appeal. He then waited 16 months. His State petition was denied as untimely. How do you respond to that? Well, Sullivan relies on this Court's holding in Harris v. Carter for the proposition that his State petition was equitably tolled during the entire time period it was pending in State Court. The reason for that is at the time that Sullivan filed his State petition on therefore statutorily tolled. So it wasn't until the U.S. Supreme Court's decision in Pace, which overruled Dictato, did Sullivan learn that he was, in fact, not statutorily tolled under the AEDPA. So if he was entitled to rely on Dictato, he was entitled to rely on Dictato from May 10, 2001 until the Nevada Supreme Court issued remitted her March 30, 2004. He wasn't required to be diligent beyond that time except to file his federal petition within a year, and he did. He filed it March 25, 2005. So he only used 360 days of his federal time. As the Court indicated in Harris v. Carter, it's not dispositive that Harris could have filed his federal petition earlier, and such is the case with Sullivan here. He had a year, and he filed his federal petition within a year after the Nevada Supreme Court's remitted her was issued. So if Sullivan's date of finality was when the State District Court issued its amended judgment December 11, 2001, and he filed a State petition before that date on May 10, 2001, then he was equitably tolled pursuant to this Court's decision in Harris v. Carter until March 30, 2004. Then his federal petition filed March 25, 2005 is timely, and this Court should remand the case back to the District Court for review of the merits of his claims. Okay. I think we have your argument in hand. Is there anything you wanted to save some time for rebuttal? Yes, I would. Okay. Thanks. From the State? May it please the Court, my name is Keith Monroe. I am here today on behalf of the named respondents. To accelerate the federal habeas process, EDPA imposed the one-year statute of limitations on petitions filed by state prisoners. Pellant's 2254 petition was dismissed because he failed to comply with this one-year time frame. His direct appeal was denied in December 1999. He didn't file his habeas petition until March 25, 2005. Clearly, he didn't comply with 2244D1 unless he gets some kind of tolling. I think the key issue for me is equitable tolling in our decision in Harris. Of course, that came out after the District Court issued its ruling. Why wouldn't it be proper to remand this case to the District Court to allow it to consider Harris in the first instance? Well, I think in Harris, I think there's some evidence that they relied upon Dictato and thought they had timely filed. In this case, they've made no argument in front of the District Court in 2001. And I think there was a factual record in the District Court. Here, there is no factual record. Why do you think that reliance is important in Harris? I'm not sure that the Harris panel really focused on reliance. Well, I think when you start talking about equity, you start talking about conduct and what you knew, when you knew it, and what you did to protect yourself. And I think in this case, they knew on March 5, 2004, they had a problem with being timely in state court. Pace hadn't been decided by the United States Supreme Court, but I think cert had been granted. And Artoos v. Bennett had certainly been decided in 2000 by the United States Supreme Court on what's properly filed and what's not. So Pace was a bit of a surprise, I think. Arguably a surprise. The issue was out there. And I think when you start talking about equity, you're talking about conduct. And when you're talking about conduct, you've got to start taking precautions to protect yourself immediately. I don't think there's a factual record here that Sullivan took adequate steps to protect himself and file a timely federal habeas corpus petition. What's your best case that says you have to take steps immediately upon this kind of notice that one would have from the cert being granted in Pace? Well, Harris was a little bit of a surprise to me, so I'll rely on that case. And I think Harris says equitable tolling is denied where a litigant's own mistake helped cause his predicament. I think his own mistake in this case helped cause his own predicament. He got denied on March 5, 2004. He presented no evidence that he didn't get timely notice of what the Nevada Supreme Court's decision was. He waited over a year, 20 days on top of that, to file his federal petition. It looks like he was dragging his feet as long as he possibly could to file his federal petition. He certainly wasn't acting timely and in good steed with some of the issues percolating in the federal courts regarding what's properly filed. Well, if conduct is the issue, then it seems to me that perhaps remand is, that makes remand even more important because then you can argue, as you have today, that he didn't take steps. They can argue, well, in fact, we did rely on Dictato. But at least that we'd have a record on that. The record is pretty bare here. The record is pretty bare. I think best case scenario Which is both ways, I think. Well, I think best case scenario, that's the most Mr. Sullivan's entitled to in this matter, is a remand. I think, as the district court below said, taking the record as good as it is, March 5, 2004, he should have filed by March 5, 2005. He didn't. Well, I think you have your argument and equitable tooling well in hand, at least on that issue. What else did you want to chat with us about today? Well, I think the district court was pretty clear on PACE. I think in PACE, said when a petition for post-conviction relief is untimely under state law, that is the end of the matter for purposes of 2244D2. The state court petition is not properly filed and therefore may not receive the benefit of the tolling provision set forth in 2244D2. That's been reiterated by the United States Supreme Court in November in Allen v. Siebert. The Nevada Supreme Court in this matter clearly held that Sullivan didn't comply with NRS 34726. I think that is an issue of whether it was timely. That's a filing condition. He didn't meet that filing condition, so as a matter of state law, he wasn't timely. I think that prevents him from getting statutory tolling set forth in 2244D2. When the Nevada Supreme Court issued its order denying the Sullivan State petition on the basis of untimely, the only thing Sullivan was on notice of was that his state petition under Nevada law was untimely. He couldn't have known until PACE was decided a year later that he wasn't statutorily tolled in federal court. That, I think, is the underlying foundation for this court's holding in Harris v. Carter. If Sullivan was entitled to rely on dictato, then he was entitled to rely on dictato during the entire time his state petition was pending. How do we know he relied on dictato? Well, I think, as this court said in Harris, presumably a petitioner who's litigating his rights in state court and then later in federal court is relying on the then-binding precedent in the court. So it's not that he was actually relying on it. You're asking us to presume that he was relying on the state of the law. I think that this court has to presume that under the circumstances. I don't know how you would, I don't know how a petitioner would be able to establish that he knew all the case law that was out there, but I think that it should be presumed that a state petitioner who has litigated his case in state and then intends in a timely manner to litigate his case in federal court is in fact relying on that court's precedent. Well, let's say that the evidence showed in this case that he didn't look it up at all. Does that make a difference? Look at what at all? He didn't look at dictato, didn't rely on it. He was just proceeding along without any regard to the statute of limitations. He had no, let's say that that's what the evidence hypothetically showed. Does that help his equitable standing? I don't know if it changes the equitable standard. I think that this court's holding in Harris v. Carter very clearly indicated that there's going to be a rare petitioner whose state petition was untimely, but was able to rely on dictato, and then because dictato was this court's precedent at the time, then delayed in filing the federal petition, but was in good faith able to rely on dictato, whether there's proof that he was in fact relying on. Well, in an equitable context, does it make a difference that he's actually aware of and relying on dictato and doesn't know anything about it? I don't think so. Why not? That wasn't the impression that I got in Harris v. Carter. I'm not so sure I agree with the state's contention that there was evidence in Harris that he was actually relying on It says our holding misled Harris into believing he had ample time, although Harris was misled by reliance on our precedent. I would argue presumably does appear a few pages earlier, but one doesn't really know whether that's a factual statement or whether it's just a characterization of what must have been happening. I think the same characterization could apply to Sullivan. The fact is that dictato was the law in the Ninth Circuit. His petition was statutorily told under dictato until the Nevada Supreme Court issued the remitter. That being the case, he had one year from that time to file his federal petition, and he did. Well, one thing that works in your favor is a district court finding that your client exercised due diligence, but the state's making a slightly different argument on diligence today. They're saying, well, that may be, I'm reading into their argument, but they're entitled to show that your client wasn't exercising due diligence as to the expanded equitable tolling claim you're making up here today. Aren't they entitled to a hearing on that if we are inclined to agree with your position? Well, I don't know what other evidence could be presented that would make a difference. If, in fact, dictato indicated that Mr. Sullivan's petition was told, then it was told. There's never been any reason for a petitioner to have acted between the court's order and its remitter. In Nevada, the appeals are pending until the Nevada Supreme Court issues a remitter. So either he's told during the time his petition is pending, or he's not. Well, that would be true under pre-Pace law, dictato. So you were entitled to rely on that as the law of the circuit then, but then Pace comes along and changes everything. And Harris then provides you with a slight break in saying, well, if you relied on dictato, then you're entitled to equitable tolling. But equitable tolling is an equitable concept. You have to weigh the factors, don't you? I think that if this was a situation in which the petitioner was required to do some act, or he's claiming that he didn't have access to records or he didn't have his files from his lawyer, then I think he would be obligated to show that he made some act during this period of time. That isn't the case here. There was nothing for Mr. Sullivan to have done. If his state petition was properly filed, then it was properly filed during that entire time, the entire time it was pending. So the only time he needed to act was after the Nevada Supreme Court issued its remitter. And he did. He didn't need to file it on the 10th day after the remitter. He only needed to file his petition on the 365th day after the remitter. And he did. Any further questions? Thank you, counsel. Thank you both for your arguments. It's an interesting point. And the case just heard will be submitted.
judges: Ferguson, Trott, Thomas